# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| LISA JOHNSON-BARKER, as Administrator of the Estate of Markus Johnson, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 21 C 1234 |
| WEXFORD HEALTH SOURCES, INC., et al., | ) ) | Hon. James E. Shadid, Judge |
| Defendants. | ) | Hon. Eric I. Long, Mag. Judge |

## NOTICE OF RULE 30(b)(6) DEPOSITION

To: All Counsel of Record

**Please take notice that** the deposition(s) of the following individual(s) will be taken at a date(s), time(s), and location(s) to be set, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. The deposition(s) will be recorded via stenography and videography.

The Instructions and Definitions set forth in Plaintiff's First Set of Requests for Production to All Defendants are hereby incorporated into this Notice as though fully set forth herein. Unless stated otherwise, where a policy, practice, custom, rule, regulation, and/or system is facility-specific, each topic is limited to the Danville Correctional Center. But to the extent that a policy, practice, custom, rule, regulation, and/or system is applicable throughout the IDOC, the designee should be prepared to state as such.

As to counsel of record for the IDOC, this is a demand on you to designate and produce the person(s) who can provide binding testimony on behalf of the Illinois Department of Corrections (IDOC), pursuant to Rule 30(b)(6) on the subjects identified below.

Please note that to each designee, this is further a demand to you to produce any documents that you reviewed to prepare for your deposition on the topic for which you have been designated.

### Rule 30(b)(6) Topics

1. The contracts between Wexford and the State of Illinois (or any department thereof) pursuant to which Wexford provides or oversees health care services within the IDOC. This includes the negotiation of each contract, the terms of that contract, and the IDOC's interpretation of that contract.

2. The policies, practices, customs, rules, regulations, and systems related to the maintenance of medical and mental health records, restrictive housing records, and crisis watch

records for prisoners within the IDOC. This request includes, among other things, policies, practices, customs, rules, regulations, and systems related to the locations where such records are maintained and stored, how (if at all) such records are made available to medical, mental health, and correctional staff at the prison and who is responsible for ensuring such availability, who (if anyone) has responsibility for reviewing such records for any purpose, collection of medical records from offsite facilities reflecting treatment provided before a patient's incarceration.

3.      The policies, practices, customs, rules, regulations, training, and systems related to the provision of mental health care to patients with mental health needs (including patients who have been designated as SMI and patients suffering from schizophrenia, schizoaffective disorder, and/or psychosis) within the IDOC, including but not limited to:

– Provision of psychiatric services;
– Provision, administration, and documentation of psychotropic medications;
– Creation and adherence to an individualized mental health treatment plan;
– Therapeutic services and other services provided by MHPs, BHTs, and QMHPs;
– Provision and administration of enforced medications (including who is responsible for determining such enforced medications are appropriate/necessary and who may issue such an order); and
– Determinations of a patient's understanding and capacity to meaningfully choose to discontinue medications or refuse medical or mental health services (including who is responsible for making such a determination and what guidance is provided regarding how to make such a determination).

4.      The policies, practices, customs, rules, regulations, and systems related to continuity of care, including but not limited to:

– Communications between and among medical and mental health staff (including communications between and among nurses, providers, physicians, QMHPs, and psychiatrists) regarding a patient's medical and mental health needs and/or the patient's treatment plan;
– Medical history reported by a patient reflecting medical diagnoses, problems, or care experienced by the patient prior to incarceration;
– Communications between medical/mental health staff and correctional staff regarding a patient's medical and mental health needs and/or the patient's treatment;
– Transfers of patients with medical and/or mental health needs to other IDOC facilities (including facilities with an RTU) and to facilities outside the IDOC (including emergency departments, IDHS facilities); and
– Records reflecting encounters with and tests of a patient from another IDOC facility, including a reception center.

5.      The policies, practices, customs, rules, regulations, and systems in place at Danville (or the IDOC agency-wide) to provide accommodations to patients who suffer from qualifying disabilities under the Americans with Disabilities Act and/or the Rehabilitation Act. Please note that this request seeks testimony both about the general policies/practices related to

ADA/RA accommodations, as well as policies/practices related to accommodations in the following particular circumstances:

- Accommodations for prisoners who suffer from one or more qualifying disabilities because of a mental health condition;
- Accommodations for prisoners who are otherwise unable to eat, drink, or take medication (for any reason, whether the qualifying disability relates to medical or mental health); and
- Accommodations for prisoners who are otherwise unable to access medical and/or mental health care (for any reason, whether the qualifying disability relates to medical or mental health).

6. The policies, practices, customs, rules, regulations, and systems related to patients who do not take in food or drink for more than three days—whether or not those patients expressly state that they are on a hunger strike.

7. The policies, practices, customs, rules, regulations, and systems related to continuous quality improvement ("CQI") programs, audits, or other inquiries into the quality of care (or compliance with the contract) by the IDOC, Wexford, and any employees/agents of either entity. Please note that this request includes both CQI and audits that IDOC performs or is obliged to perform, and CQI and audits that Wexford performs or is obliged to perform and includes both CQI and audits that pertain to Danville specifically, and those that relate to the IDOC as a whole.

8. The policies, practices, customs, rules, regulations, and systems related to cell extractions and/or forced lab draws at Danville, including whether and under what circumstances force is permitted and/or required; whether and under what circumstances medical and/or mental health staff are required to take instruction from correctional staff (and vice versa); whether and under what circumstances medical and/or mental health staff are required to clear the area and remain away from the patient; and whether and under what circumstances such extractions and/or forced lab draws require any particular type of medical care (i.e., the taking of vitals).

9. The policies, practices, customs, rules, regulations, and systems in place within the IDOC related to the review and analysis of deaths of incarcerated individuals, as well as investigations and/or documentation regarding such deaths.

10. The meeting held in Springfield following Markus Johnson's death to discuss his death and the death of another prisoner, including who attended and what was discussed, what documentation was created before, after, and during the meeting (including any "root cause analysis," *see* Wexford Bates 002852-53), what (if any) actions were taken as a result of the meeting or any analysis conducted afterward, and what (if any) discipline or other changes to practices occurred as a result of the meeting or Mr. Johnson's death.

11. The decision to change IDOC's policies or practices related to hunger strikes following Markus Johnson's death on September 6, 2019. *See* IDOC's Response to Plaintiff's First Set of Requests for Admission to IDOC (Sept. 11, 2023).

3

12.     Subject to applicable privileges, the preparation of the IDOC's Rule 30(b)(6) designee(s). This includes the documents the designee(s) reviewed to prepare, the people they prepared with, the people they were prepared by, and the amount of time they spent preparing.


                                        Respectfully Submitted,

                                        By: /s/ David Schmutzer
                                             Attorney for Plaintiff

Howard Kaplan
Sarah Grady
Jed Glickstein
David Schmutzer
Nabihah Maqbool
KAPLAN & GRADY LLC
2071 N. Southport Ave., Ste. 205
Chicago, IL 60614
(312) 852-2184
david@kaplangrady.com


4

## <u>CERTIFICATE OF SERVICE</u>

I, David Schmutzer, an attorney, hereby certify that on October 6, 2023, I served a copy of the foregoing by electronic and U.S. mail to all counsel of record.

/s/ David Schmutzer
Attorney for Plaintiff