IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| Lisa Johnson-Barker, as Administrator of the Estate of Markus Johnson, </br></br>Plaintiff,</br></br>v.</br></br>Wexford Health Sources Inc., *et al.*</br></br>Defendants. | Case no. 1:21-cv-01234-JES-EIL </br></br>The Honorable James E. Shadid</br>Magistrate Judge Eric I. Long |

**IDOC'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL [176]**

The Defendant, the Illinois Department of Corrections (IDOC), by and through its attorney, Kwame Raoul, Attorney General of Illinois, hereby responds to oppose Plaintiff's Motion to Compel filed April 13, 2024 (ECF No. 176). In support of such response, it states that:

## Introduction

Plaintiff's Motion to Compel must be denied for several reasons. First, the Plaintiff has not satisfied her obligation to meet-and-confer before raising the matter with the Court; indeed, recently Plaintiff has accepted many of the IDOC's objections and positions on the contested issues; moreover, there are ongoing discussions between the Parties that have led to tentative compromises, making any court order for compelling discovery premature. Second, it is impractical to address all deposition topics within the seven-hour limit set by the Court for this single Rule 30(b)(6) notice. Last, the requested depositions are duplicative (see FRCP 26(b)(2)(C)) and overbroad,

given that the IDOC has already provided extensive documentation and deposition testimony on the same subjects, as outlined in its discovery letter at ECF No. 176-8. Therefore, compelling these depositions without the Parties meaningfully completing the meet-and-confer process will not substantially advance the case but would significantly increase litigation costs. Accordingly, the Motion must be denied.

## I. Defendant Requests Permission to Submit Correspondence, in Accordance with Standards of Professional Conduct and Duties to Counsel.

As a procedural matter, the Defendant must address a key aspect of the Plaintiff's Motion, which involves the inclusion of various emails between the Plaintiff's counsel and the undersigned, attached as exhibits. Such disclosure of correspondence between counsel is discouraged by the Seventh Circuit Court of Appeals' rules, except where specifically permitted by the Court. *See Standards for Professional Conduct Within the Seventh Federal Judicial Circuit, Lawyers' Duties to Other Counsel* ¶ 30 ("Unless specifically permitted or invited by the court, we will not send copies of correspondence between counsel to the court.") This rule supports the overarching goals of professionalism and civility, and is rooted in a practical concern: Ensuring attorneys can communicate frankly without fear that every word could be scrutinized by the Court. This fosters a more open, effective exchange that can lead to resolution without court intervention, consistent with Rule 30(b)(6) and Rule 37(a)(1)'s requirement that the Parties confer in good faith with one another as much as necessary to prevent the need for judicial intervention.

Given this context, the Defendant seeks the Court's permission to submit two selected pieces of correspondence. This request is made to: (1) illustrate the ongoing, constructive efforts by both parties to resolve their disputes outside the courtroom; and (2) respond appropriately to the Plaintiff's selective disclosure of correspondence that does not fully represent the interactions between the parties. The intent of submitting these documents is not to cast aspersions on the Plaintiff's counsel or suggest any deliberate misrepresentation of the Parties' meet-and-confer efforts, but rather to provide a comprehensive and transparent view of the discussions that have taken place. Defendant therefore prays for the Court's leave to file these two pieces of correspondence, attached hereto as Exhibits 1 and 2.

II. **Plaintiff Fails to Meet Required Meet-and-Confer Obligations, Making the Motion to Compel Premature Due to Effective Ongoing Discussions.**

Plaintiff's recitation of the Parties' meet-and-confer obligations is incomplete because they remain ongoing, something the Motion passes over. Indeed, on April 12, 2024—just three days before Plaintiff filed the instant Motion—the Parties had a telephone conference about the eight topics for which Plaintiff seeks to compel IDOC designees. As a result of that conversation, Plaintiff expressed that she still had a lot of work to do in order to pare down, limit, or otherwise compromise those topics. (*See* Exhibit 1, Email from Plaintiff to IDOC, Apr. 15, 2024.) Although Plaintiff makes passing reference to this telephone call in which all 30(b)(6) topics were discussed, her Motion only references one. Therefore, Defendant must disagree with Plaintiff's recitation of the Parties' efforts to come to a meeting of the minds, which Plaintiff

sought only recently to revisit, and the failure of which is documented by Plaintiff's own exhibits and Exhibit 1 hereto.

IDOC, therefore, point to their comprehensive letter they wrote to Plaintiff's counsel, which details in somewhat exhaustive fashion IDOC's concerns with the many deposition topics under Rule 30(b)(6). (IDOC Rule 37 Letter, ECF No. 176-8.) Defendant also points to Exhibit 1 hereto which summarized a call the undersigned had with Plaintiff's counsel—a call Plaintiff thought not to mention in the Motion. (Ex. 1.) In summary, IDOC and Plaintiff conferred on December 13, 2023, for the first time about the topic; during that call, Defendant's undersigned counsel voiced the same objections there as in the subsequent letter dated April 11, 2024 (ECF No. 176-8). Plaintiff followed up in a short email during the holidays on December 29, 2023, summarizing only three parts of the Parties' call, as Plaintiff had declined to substantively limit any of the topics. Plaintiff's next outreach relating to this 30(b)(6) notice was on March 20, 2024, in an email in which undersigned counsel was not included.

After receiving Plaintiff's March 20 follow-up, undersigned counsel for IDOC informed Plaintiff that designees would be produced for Topics #3, 8, and 9. Thus, IDOC has assured Plaintiff it will produce designees of these three substantial topics, one of which is about extractions and use of force, and another which is about mental health care *generally* (a significant topic in its own right that will use many of Plaintiff's deposition hours). Despite these constructive (and productive) efforts that have yielded many concessions *from Plaintiff* about the scope and nature of the

deposition topics,[1] Plaintiff asserts in her Motion that some dispute is now ripe for this Cout's adjudication. It is not.

Under Rules 30(b)(6) and 37(a)(1) of the Federal Rules of Civil Procedure, parties are obligated to engage in a meet-and-confer process before seeking judicial intervention in discovery disputes. As specified in Rule 37(a)(1), the motion must include a certification that the movant has, in good faith, conferred or attempted to confer with the opposing party in an effort to resolve the dispute without court action. Rule 30(b)(6) has its own, independent requirement of good-faith meet-and-confer efforts, stating pursuant to its 2020 amendment: "Before or promptly after the notice or subpoena is served, the serving party and the organization must confer in good faith about the matters for examination."

This requirement is not merely procedural or *pro forma*; it embodies the public policy that the court should only adjudicate those issues that the parties cannot settle independently. It is well known that the primary purpose of this requirement is to encourage parties to resolve disputes among themselves *without* the need for the

---

[1] As just one example of the Parties' ongoing collaboration: In December 2023 during the Parties' initial telephone conference on the topics, Attorney Robbin for IDOC stated that Topic #1 (regarding the Wexford Contract, all of its provisions, its negotiation, and interpretation of all of its provisions) was overbroad because it did not request a designee prepared to discuss any particular topic; further, any interpretations of the contract or negotiation would be irrelevant and likely privileged. (IDOC Letter, ECF No. 176-8 at 3) ("We propose—as we did as we did during our initial call [in Dec. 2023] with you— that you focus on a specific, express contractual term from a specific contract that is clearly set forth in the topic.") Although Plaintiff says that a "full slate" of designees must now be provided, and that Defendant's objection was "meritless" and "forfeited," Plaintiff nevertheless has limited Topic #1 with the very thing that IDOC requested 4 months ago: specific contract provisions of interest. (Email from Plaintiff, Apr. 11, 2024, ECF No. 176-9) ("Here are the contract provisions we sent to Wexford and would agree to limit Topic 1 to these provisions. I will be looking over Bowman's deposition to see whether he addressed some of these or all of them and let you know.") Plaintiff now states that the delay in producing a 30(b)(6) designee for Topic #1 is IDOC's fault. Not only did Plaintiff compromise with IDOC. Her counsel stated that they were still working on further compromising and would "let [IDOC] know" about the result of their internal research. No result has yet come to counsel's attention.

Court's involvement, fostering a cooperative dialogue that may lead to more efficient dispute resolution. "The principle behind Local Rule 37.2 is that requiring an in person or telephonic meet and confer will weed out disputes that can be amicably resolved without judicial intervention, thereby freeing the court's resources for disputes that truly cannot." *AIG Prop. Cas. Co. v. Fluidmaster, Inc.*, No. 1:14-cv-05696, 2018 U.S. Dist. LEXIS 9848, at *8 (N.D. Ill. Jan. 22, 2018) (applying analogous local rule 37.2 of Northern District of Illinois). This preemptive measure serves to streamline litigation and reduce judicial workload by eliminating unnecessary motions (like the one here) that could otherwise be resolved through direct communication between the parties (again, like the one here). Only those issues that cannot be resolved by the Parties should be brought to the Court's attention.

Case law on the subject of motions to compel during ongoing meet-and-confer discussions is notably limited. This scarcity reflects a practical reality: Litigants refrain from filing such motions until it becomes clear which issues necessitate judicial intervention. Therefore, when parties are actively engaged in discussions to resolve discovery disputes, it is generally premature to involve the court. The underlying principle is that these issues might be settled amicably without judicial interference, thereby preserving judicial resources and adhering to the intent of Rule 37's procedural framework. Consequently, if ongoing negotiations show promise of resolving the issues, the dispute is unripe for adjudication, as further dialogue could eliminate the need for judicial involvement.

Here, the Parties have not completed their meet-and-confer discussions because Plaintiff, by her own admission, is still looking into the issues IDOC raised during their December 2023 call, April 2024 letter, and April 2024 call. Subsequent email correspondence reflects the same ongoing discussions. IDOC awaits many things from Plaintiff, including proposed stipulations as to the anticipated testimony of respective designees, designations of prior testimony of similar deponents who testified on behalf of IDOC in other litigation or one of the dozens of deponents who already testified in this action. Plaintiff attached much of this correspondence to her Motion. IDOC is confident that, upon review of this correspondence even at a glance, the Court will find insufficient evidence of a meet-and-confer effort that has conclusively ended on identifiable, actionable issues.

Accordingly, it is unknown which of the 30(b)(6) topics are ripe for this Court's input. Plaintiff states that IDOC "refuses" to produce designee(s) as to topics 1, 2, 4, 5, 6, 7, 10, and 11. None of the topics are ripe for a motion to compel.

The Parties continue to discuss Topic #1 (Wexford Contract Provisions, Negotiations, Interpretation), in which Plaintiff emailed the very items IDOC requested (specific contractual terms) at 4:32 p.m. on April 11, but then filed this Motion at 5:21 p.m. on April 13. Indeed, Plaintiff stated in that very email "I will be looking over Bowman's deposition to see whether he addressed some of these or all of [the specific contract provisions identified in the email] and let you know." (ECF No. 176-9 at 2.)

The Parties continue to discuss Topic #2 (Medical and Mental Health Records, Restrictive Housing Records, and Crisis Watch Records). During the Parties' December 2023 telephonic conference, undersigned counsel highlighted the overbreadth of this topic, and agreed to limit it to Restrictive Housing and Crisis Watch logs only, as opposed to also medical and mental health records. (*Id.*)

The Parties continue to discuss Topic #4 (Continuity of Care), where Plaintiff states a deposition may not even be needed but they need to draw up a stipulation. At Plaintiff's invitation, IDOC intends to discuss this topic further to avoid unnecessary oral discovery expense. (*Id.*)

The Parties continue to discuss Topic #5 (ADA Accommodations), a topic Plaintiff stated must include how specific mental health disorders are given ADA accommodation. Plaintiff stated on the phone on April 12, however, that only the general process of ADA accommodations would be looked into at a deposition; not the many sub-topics the topic listed.

The Parties continue to discuss Topic #6 (Hunger-strike policy). Although IDOC stated that the written policies say precisely what the IDOC's policy is, Plaintiff states she needs testimony because "there is ambiguity on the policy and witnesses in this case." Although on April 22 undersigned counsel asked Plaintiff's counsel what those ambiguities were or inconsistent testimony was, Plaintiff hasn't substantively responded to this email, instead just saying a designee is "needed." It is therefore unclear why Plaintiff cannot simply rely on those individuals' testimony and simply compare it to the written policy, but IDOC does not believe Plaintiff has in sufficiently

conferred in good faith under Rule 37 on this issue. (See Ex. 2, Email from Plaintiff of Apr. 26, 2024) (seeking designee due to unspecified ambiguities and unspecified inconsistent application of hunger strike policy).

The Parties continue to discuss Topic #7 (Continuous Quality Improvement, CQI), Plaintiff promised to review Dr. Steven Bowman's deposition testimony to see whether designations could be used to satisfy any of Topic 7, and further elaborated (for the first time) that Plaintiff did not want to "dive into the weeds of a particular CQI document—of which Plaintiff has hundreds, if not thousands. Given that this is the first time Plaintiff substantively responded to IDOC's concerns on the breadth of this topic, the issue is not ripe. (Email from Plaintiff, Ex. 1 at 2.)

The Parties continue to discuss Topic #10 (the "Springfield Meeting"), in which Plaintiff "agreed to propose designations from Dr. Meeks's testimony [in this litigation], which [Plaintiff] believe[s] will satisfy this topic." Given that Plaintiff has yet to provide these designations, this issue is certainly not ripe by Plaintiff's own admission. (Email from Plaintiff, Ex. 1 at 2.)

The Parties, however, are at issue as to Topic #11 ("the decision" to change the hunger strike policy), because the topic does not seek any specific information or institutional knowledge on which a designee can ever be reasonably prepared. Rather than address IDOC's requests for further clarity on what Plaintiff needs *about* the institutional decision, Plaintiff has resisted all of IDOC's attempts to gain some footing on what Plaintiff *needs* through testimony about this overbroad topic.

As noted above, either (1) Plaintiff and IDOC have not completed their meet-and-confer efforts, or (2) Plaintiff has outright declined to participate, instead simply resting on the topics as written without substantive explanation as to what Plaintiff actually wants from the IDOC. Plaintiff's resistance to participating in limiting (or at least *defining*) aspects of the Topics does not satisfy Rule 37's mandate of a reasonable attempt to resolve issues cooperatively out of Court. *See, e.g., Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456, 459 (D. Kan. 1999) (explaining that "parties do not satisfy the conference requirements simply by requesting or demanding compliance with the requests for discovery"). The Motion should be denied on this ground alone.

### III. Plaintiff's Deposition Topics are Duplicative and Overbroad.

As noted in IDOC's letter of April 11, 2024 (ECF No. 176-8), Plaintiff's topics, as written, are overbroad or duplicative of other discovery—particularly the tens of thousands of pages of *written* discovery already exchanged. Fed. R. Civ. P. 26(b)(2)(C). IDOC incorporates its positions articulated in that letter as if they were written here. However, as noted above, because of the evolving nature of the Parties' mutual efforts to get this done without the Court's involvement, that April 11 letter may not reflect the current position of either party. IDOC stands ready to substantive a specific dispute about any specific topic once that dispute is properly and timely brought to the Court's attention after a completed Rule 37 meet-and-confer <u>process</u>. As shown through the Parties' correspondence of record in Plaintiff's Motion and this Response, that process is ongoing.

### IV. It is Unfeasible to Address All Deposition Topics Within the Court's Seven-Hour Limit, Rendering any Order to Compel Fruitless.

Even if this Court were to order the scheduling of designees for each of the unripe disputes Plaintiff attempts to bring to the Court's attention, it is unlikely Plaintiff will depose all of them. This Court limited Plaintiff to three 30(b)(6) notices, with 7 hours each:

> 1:21-cv-01234-JES-EIL   # 121   Page 4 of 6
>
> Plaintiff is granted leave to conduct an additional 70 hours of depositions, **plus three Rule 30(b)(6) depositions that may include up to 7 hours each**. This allows up to 91 hours of deposition testimony beyond the depositions conducted prior to the time Plaintiff filed her motion. Plaintiff may renew her motion for additional depositions, but if she does so, she must show good cause to obtain *additional* information and demonstrate that the extra 91 hours was insufficient to learn that information. Plaintiff is reminded that the rules of civil procedure should be employed by the parties to secure the just, speedy, and inexpensive determination of every action. Fed. R. Civ. P. 1. Accordingly, Plaintiff is encouraged to use this deposition time efficiently and refrain from duplicating testimony and facts already firmly established through other depositions.

(Order at 4, ECF No. 121.) Plaintiff has issued three 30(b)(6) notices: one to the Illinois State Police, one to Wexford Health Sources, Inc., and one to the IDOC.

Here, IDOC has committed to providing two designees to cover three significant topics: Topic #3 (general mental health care), Topic #8 (cell extractions and forced lab draws), and Topic #9 (death investigations). Addressing just these topics could easily fill the allotted seven hours. Yet, the Plaintiff is also pursuing

<u>eight</u> additional topics, some of which are even more complex than Topics 3, 8, and 9. It is unreasonable for the Plaintiff to insist that IDOC prepare designees for topics that may not ultimately be deposed. Such potential inefficiency is precisely what the mandatory meet-and-confer requirements of Rule 30(b)(6) and Rule 37(a)(1) aim to mitigate, as well as Rule 1, which provides that the Rules are employed to secure speedy, just, and inexpensive determinations of actions.

## **Conclusion**

In conclusion, the Illinois Department of Corrections respectfully requests that this Court deny Plaintiff's Motion to Compel. Given that judicial supervision of discovery is typically reserved for unresolved disputes, and considering that the Parties are still actively engaged in the meet-and-confer process, judicial intervention at this stage is premature. Additionally, the Plaintiff's deposition topics are overly broad and duplicative of materials already provided, making further exploration unnecessary. But even if those topics were allowed in full, the impracticality of addressing all of them within the limited seven-hour timeframe set by the Court in its order of March 15, 2023, further highlights the inefficiency of granting the Motion at this stage. Therefore, IDOC urges the Court to recognize the ongoing efforts to resolve the disputes through the meet-and-confer process, which is designed to obviate the need for such court-ordered discovery.

WHEREFORE, the Defendant, the Illinois Department of Corrections, prays that this Court deny Plaintiff's Motion to Compel filed April 13, 2024 (ECF No. 176.)

        Respectfully submitted,

        KWAME RAOUL
        Attorney General of Illinois

By:    */Daniel N. Robbin/*
        Daniel Noah Robbin
        Bar No. 6321386
        Assistant Unit Supervisor, Prisoner Litigation
        Government Representation Division
        Office of the Attorney General
        115 S. La Salle St.
        Chicago, Illinois 60603
        (312) 814-7199
        daniel.robbin@ilag.gov